You must be Mr. Morris. Yes, Your Honor. You may proceed. Thank you, Your Honor. Good morning, Your Honors. We return to this court for a second time in this case. This is the second time that the district court granted a motion for summary judgment against Dr. Bess by refusing to follow clear Ninth Circuit law. Because of the flat refusal of the district court to follow Ninth Circuit law twice, we request that the judgment be reversed and remanded to a different district court judge because of the unusual circumstances presented. Well, if you are correct and it goes back to Judge Real, what happens then? It goes to trial on the bad faith aspect of the case? Here's our concern with respect first to the bad faith. If the case is remanded to Judge Real, my immediate concerns are that there will be a motion for summary adjudication to knock out the bad faith claim. Then you'd only be left with the breach of contract claim. I am greatly concerned, and let me say that I think it's pretty standard for insurance companies to, in most cases, at least take a shot on a motion for summary adjudication to knock out a bad faith claim. I am greatly concerned that Judge Real will continue to ignore Ninth Circuit law and will throw out our bad faith claim. With state law questions at that point, though, isn't it? Excuse me. You're right. I meant that's correct. We'll ignore state law on the bad faith claim and throw out the bad faith claim. Counselor, can I get to the merits of your position? I was pretty favorably disposed to your position on the merits, at least so far as the Department of Labor regulation is concerned, until we came across Kennedy. Are you familiar with the Kennedy case? I believe so, yes. How do we deal with this language in Kennedy which says that a plan whose sole beneficiaries are the company's owners cannot qualify as a plan under ERISA? Right. That statement completely supports our position. Our position is that a plan whose sole beneficiaries are co-owners are not covered by ERISA. That's our argument. So our argument is in 1991 this court in Kennedy stated the rule that Your Honor just stated. Then in 2001 in LaVenture, this court restated and confirmed the Kennedy rule. In other words, in our case, here's what we have. Dr. Bess was the sole owner of the corporation at the time the two policies at issue were purchased, first of all. Which was what date? The policies were... I don't need an exact date, but just what year. I think it was 1987 and 1992 are the purchase of the two policies. Okay. So she was a sole owner. So let me first state with respect to that. When you say the purchase, it's not like a life insurance policy where you purchase a policy, is it? It's like car insurance, you buy it every year. It's a new policy every year, isn't it? No, no, no. I believe you purchase a disability policy one time and the policy covers you just based on the terms of the policy. In this case, the terms included lifetime. So it's a one-time purchase. It's a one-time purchase or a one-time premium? No, you purchase it up front, I believe, but you pay premiums each year. And the premium is set when you buy the policy? Yes, yes. And I believe there are certain situations where the premium can be increased, but generally... That sounds more like a no than a yes. Let me state my belief. My belief is that the premium is set at the time that the policy is purchased with, I think, very limited exceptions. That still sounds to me like a no. I mean, like a yes. Sounds to me like the premiums are not set. It's not like buying a life insurance policy. Let's say you buy not a term policy. Let's say you buy a whole life policy. It's understandable. What happens is you buy it today and your premium is set. It's set for the remainder of your life. If tomorrow you happen to get cancer or get run over by an automobile or anything happens, it doesn't matter. The premium stays the same because what you've bought is the right to... You've bought the policy and the right to pay the same premium regardless of changed circumstances. Nothing the insurance company can do to change the premium no matter what happens to you. And in that sense, we can say the policy is purchased in year one and it's your policy. Premiums are set. If you're in a situation where the insurance company can change the premium from year to year and you're quite unclear under what circumstances, that's actually more like a policy that is renewed every year, just like your car policy or any other policy that... Like health insurance, for example. You may be entitled to keep it in force, but it's not the same policy, I don't think. This is definitely like the former. I know you're convinced of that, but I'm trying to get you to convince me of that. I understand. The premium is set out at the time you purchase the policy. All of the terms are set out at the time you purchase the policy. And I don't know, in fact, that there are any exceptions for the premium being increased. Sometimes the policyholder has the right to increase the monthly benefit, which would then, of course, increase the premium. Yes, that's true. But I think other than that, possibly, everything is set up front. The insurance company, you're telling me, cannot change the premium because of inflation or... I don't believe they can. It sounds to me like I don't know. No, I mean... I don't know, I mean... No, I've looked at these policies in this case and other cases. I don't believe so. So it's your position that the policy is bought in year one and is owned at that point by the insured, which is the company here, Dr. Best? Dr. Best. Okay. And that happened in 19... This is why I asked you, I said, when was it purchased? You said 87 through 92. No, I said one was purchased in 1987, one was purchased in 1992. There are two policies. I misunderstood. Okay. So one was purchased in 87, one purchased... And at both of those points in time, she was 100% owner. That's correct. And then at some point, her son, Oleg, starts becoming partial owner. Eventually, at this point, he is full owner. That's correct. Okay. How does that work? Well... At the point that she started seeking to recover on it, what was... At the time she made the claim... Made the claim. At the time she made the claim, she was also sole owner. She was sole owner when the policies were purchased. She was sole owner at the time she made the claim. She was not partial owner. She was not partial owner. She was sole owner at the time the claim was made. Then what does LaVenture have to do with this case? Well, we cited LaVenture just for the fact that... LaVenture was a joint ownership case. Two owners, yes. I'm sorry, not a joint ownership. A joint ownership of the corporation case. Yes. Whereas, I understand it's your position that at all relevant times, Dr. Bess, Dr. Bess Sr. I guess her son is Dr. Bess as well, right? They're both Dr. Bess. Okay, so Dr. Ludmilla then was a... The sole owner at all relevant times as far as your narrative goes. Yes, that's right. Exactly. And so LaVenture really doesn't have anything to do with the case. That's... Yes. It doesn't have anything to do with the case unless... I see time running out. It's okay. You can talk as long as we're asking questions. Okay, but if I could reserve a minute or two. Why don't you just answer questions? Thank you. Thank you. LaVenture does not apply unless your honors believe that the fact that Dr. Bess was not a sole owner during the time that her claim is being adjudicated is relevant. In other words, if your honors believe that... Your position is or should be, I guess, that once you make a claim, it doesn't matter whether the corporation got out of business or what happens. Our position is actually even earlier. Our position is at the time the policies are purchased... I understand. Yes. But you don't need to go that far. Yes. Yes. You don't need to go back to date of purchase, and that's a more debatable point, it would seem to me. You have a stronger claim to say once you make a claim, you look at that point in time. So the LaVenture argument only comes into play at the point where she is partial owner. But at this point, she's not even partial owner. She's not an owner at all. That's correct. That's correct. So once, if we sort of unmoor ourselves from the date of the claim, if we say, you know, that's not the relevant date, then why is today the relevant date? In which case... If I could check just one point very quickly. Please. Thank you. Do you want to maybe sit behind? We'll give you a minute for a bottle and you can look up that point. Yes, that would be fine. Thank you. Okay. Good morning, Your Honor. My name is Gary Goodstein. I'm here with Martin Rosen this morning. We're both with the law firm of Barger and Rowan, and we're representing the defendant, Annapelli New York Life Insurance Company. How are you? I'm well, thank you. Good. Initially, let me respond to the court's inquiry about the underlying facts and specifically the chronology. Yeah, facts are good. Counsel was correct. The policies were purchased respectively in 1987 and 1992. And at that point, Dr. Ludmilla was the main... Was the sole owner. Was the sole owner of it. In 1993, she transferred 10% of the interest in the company to her son, Oleg, at the time he commenced working for the corporation. And between 1993 and 1998, as part of his compensation package, each year he received an additional 10%, so that by 1998, at the time the claim was submitted, Ludmilla Best was a 50% owner of the corporation, not the sole owner of the corporation. That's set forth very clearly in the Statement of Stipulated Facts, which the motion for summary judgment was based on. There were no disputed facts in this case at all. All the facts were... At the time the claim was submitted, she was half owner. She was half owner, and within a year and a half after that... That's how LaVenture comes into play. That was my impression until counsel said otherwise, and that's how I was sort of confused. But at the time the claim was made, she was half owner. That's correct. Newark Life's position is that LaVenture still doesn't apply, because the facts in that case were that there was a husband and wife as co-owners, and therefore it's distinguishable from the present case on the basis that the co-owners in this case were not husband and wife, as specified in the Department of Labor's regulation. The Kennedys weren't husband and wife, were they? The Kennedys were not. They were brothers. Well, how do you get around Kennedy? Kennedy was wrong. It's simply stated. Well, is it in the law with our circuit? No, Your Honor, it's not. Did he tear it up? The statement in Kennedy is dicta. The language that the court stated in Kennedy in which the plaintiff is relying on this case was really nothing more than a platform for the court to discuss the primary holding in the case, which was an evidentiary question of whether inconsistent affidavits could be considered on summary judgment. That's what Kennedy was about. This statement is... Why was the inconsistency affidavits relevant in Kennedy? Well, it was relevant... Unless you posit the issue that it might matter, you don't get to it. Unless you hold that brothers, in fact, can, if they're co-owners, I agree, fall under the law, you don't even get to the question of affidavits, right? I agree. Would you connect up the Department of Labor regulation and Kennedy? Obviously, I'm confused on that. I'm not sure how that works. Sure. Kennedy relies on two items of authority for its general statement that owners of a corporation do not fall within the definition of an employee. Right. The first is the regulation itself. And the language of the regulation does not support the general statement of law that Kennedy states. Kennedy simply overstates what the regulation provides. The second is the Schwartz v. Gordon case from the Third Circuit. That case also doesn't support the conclusion that the Kennedy court reached, because in that case, again, you're dealing with a sole proprietor and specifically exempted from the definition of an employee under the regulation. Well, I'm not so worried about the mistakes of the Third Circuit. Our own mistakes are far more relevant here. And there's two points to be made there. So let's not slide into the Third Circuit. The simple fact is that you may disagree with Kennedy's reading of the regulation, and I might disagree with it, but there was no point to the Kennedy opinion unless two brothers were entitled to be, if they're co-owners, exempt from ERISA. This is not the Eighth Circuit. The two brothers are probably not married to each other. I think so. I agree, Your Honor. Kennedy is not binding in the circuit because it's not the only consistent ruling from the circuit. In re-mets, which is a Ninth Circuit case as well, comes out the exact opposite direction. Does it take Kennedy into account? It does. It cites to Kennedy. And more importantly— Oh, that's a bankruptcy appellate panel? That's correct. Well, it's only from this circuit in the sense that this court opinion might be from the circuit. It certainly can't overrule Ninth Circuit authority. Once again, Your Honor, I don't believe that Kennedy is controlling primarily because the language that the plaintiff is relying on is not the primary holding of the case. I understand and agree with the Court's assessment. That it was a necessary underpinning to springboard to get the Court to the issue that it was analyzing. Part of the problem with Kennedy— That's your case, right? You know, just to cut to the chase, if we look at Kennedy and believe Kennedy is controlling, then you lose. And this goes back to trial. If we look at Kennedy and think that statement Kennedy was mere dicta, which we can simply ignore, then you might win. Is that what it gets down to? Essentially, however, if you conclude that Kennedy is controlling, the Ninth Circuit will be inconsistent on this particular fact from every other circuit that has addressed the issue. And that's every circuit except the First Circuit. Very unusual, you know. You can just sense the discomfort we would feel about that. Understood. However, we're talking about— You are aware, are you not, that, again, I'm not saying how we're going to read Kennedy, but if we do read Kennedy as controlling, you understand we have no power to overrule it. The best we could do is rule against you, and then if we read Kennedy that way, then await your petition for a hearing in bank, in which case, if the case goes in bank, in bank panel, then bank court might be able to overrule it, would be able to overrule it. You understand we don't have any power to overrule it. I do, although I don't believe you're bound to follow it for the reasons that I've attempted to state here this morning. It is inconsistent with the very authority on which it relies for the proposition that it purports to state. That also makes it very unusual in the circuit. Do you wish to spend any of your time, unless my colleagues have any questions further on the merits, on the question of the possible remand to Judge Real if it turns out that we consider Kennedy to be controlling? Sure. New York Life's position is that Judge Real has done absolutely nothing improper and appropriate that would indicate an exceptional circumstance justifying the transfer of the case to another judge on remand. The original motion for summary judgment, at the time it was granted, was based on a correct reading of the law. What happened was the law changed a month later. At the time it was entered, it was a correct statement of the law. Because that was before? Laventure. It was prior to Laventure. Laventure came out the very next month and admittedly undermined the basis for the court's ruling. New York Life, in fact, stipulated to that fact. But because Judge Real was aware of the change in facts, and it's significant to note that between the last time we were here on appeal and this time, the plaintiff has admitted to the fact that she was not the sole owner of the corporation. At the time of the original appeal, that's what the record reflected, that she was the sole owner. She's now admitted that that was not the true statement and has stipulated to the fact that she was only a 50 percent owner at the time. Excuse me for going back. You, I gather, do agree that it is the date the claim was made that is the relevant? Oh, absolutely, Your Honor. It can be nothing under. First of all, under in remit, plaintiff claimed in their reply brief that New York Life didn't cite any case for the proposition that a non-ERISA plan could be converted into an ERISA plan because the sole owner later becomes a co-owner. In fact, we did cite the case. That's exactly what happened in the Mets case. I'm sorry. You don't claim it's a later position than the date of claim. I'm sorry. Say that again. You don't claim a later time. No, it's. The date of claim is the figuring event. That's correct. And by then you did. And you argue it's not the purchase date. That's correct. And I will cite the. I just want to know your position. Okay. And I will cite the court very quickly to Harris v. Providence Life 26F3rd 930 at 933, which is a Ninth Circuit from 1994, which is a case that stands for the proposition that whether a plaintiff is a plan participant is determined as of the time he files his lawsuit, which is even later in this case than 1998 when the claim was submitted. This lawsuit wasn't filed until 2000. So with respect to that particular issue, I believe we're on very firm ground that you do not look to the situation at the time the policies were purchased, but rather under the ERISA statute itself, which provides that a plan is determined whether it's established or maintained. You've got a minute. Actually, Your Honor, the fact I was looking up was that fact that the that she was, you know, you know, agree that at the time of claim she was no issue. Yes, I agree. Absolutely. And you argue or you stand on that? Stand on it. Absolutely. That's fine. Okay. And you stand on that for the following reason. I mean, that's consistent with what I thought was going on. That's what you said. I just got the date right. That's fine. Your Honor, it's not only Kennedy. And Kennedy is critical. And it's the case we've most relied on. But it's also. Your view of Kennedy is that it is consistent with the D.O.L. reg? It is consistent because there's nothing in the D.O.L. regs which state that co-owners are covered by ERISA. In addition to Kennedy, the reason LaVenture is so important is because LaVenture restated the rule in 2001. So if there's any question that, well, Kennedy was just dicta, this court in 2001 restated the rule. And finally, because we requested it. But we did send a husband and wife case. True. But here's New York Life's problem. This court made no mention of the fact that it was a husband and wife was important to the ruling. In other words, there was no discussion saying, well, the reason we're ruling as we are is because it's husband and wife. And husband and wife fits within the D.O.L. regulation. Fair enough. Okay. Finally, this court in its memorandum of opinion in this very case on the first appeal, and Justice O'Scanlan was on that initial panel, stated that Kennedy, LaVenture rule again. We had requested that because the fact is New York Life had made the same argument before. In other words, during the first appeal, most of the first appeal, their brief was spent on this same argument that we're now discussing. Finally, because it's so important, I just want to come back to the question of the remand. What happened in the first, with the first motion for summary judgment? Judge Real granted the motion for summary judgment. Then LaVenture came down, making clear to everyone that his ruling was no longer valid because LaVenture was directly on point. It was so clear to New York Life that New York Life stipulated to the granting of the motion for reconsideration. I think we understand. Okay. Thank you very much. Okay. Thank you.
judges: Kozinski, O'scannlain, Silverman